IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Synetha Penn,

    Plaintiff,

  v.                              Case No. 2:09-cv-00169

Michael J. Astrue,              JUDGE HOLSCHUH
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Synetha Penn, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. The former application was filed on December 21, 2004, and the latter was protectively filed on November 30, 2004. Both alleged that plaintiff became disabled on June 7, 2001.

After initial administrative denials of her claim, plaintiff was afforded a vidoeconference hearing before an Administrative Law Judge on June 23, 2008. In a decision dated July 25, 2008, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on January 2, 2009.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on May 13, 2009. Plaintiff filed a statement of errors on July 10, 2009 to which the Commissioner responded on September 17, 2009. Plaintiff filed a reply on October 2, 2009, and the matter is now ripe for decision.

### II. Plaintiff's testimony

Plaintiff's testimony at the administrative hearing revealed

the following. Plaintiff, who was 45 years old at the time of the administrative hearing, has a twelfth grade education and has also earned a home health care certificate. (Tr. 401-02). She last worked in 2002 as a home health care aide. She stopped working because she cannot sit, stand or walk for any length of time, or lift any significant weight, due to back, hip and leg pain. (Tr. 402-03).

Plaintiff underwent spinal fusion surgery in 2004. She had a second surgery to remove some hardware in 2005. Her symptoms worsened after surgery. (Tr. 403). Further surgery has been suggested. (Tr. 404). She takes a number of pain medications as well as sleeping medication and medication for depression. (Tr. 407). She has not had any mental health counseling, however. Id. She attempts to relieve her physical symptoms by sitting in a recliner and lifting her legs up, or lying down and propping them up. (Tr. 408).

Plaintiff can lift a gallon of milk, can sit for 45 minutes at a time, can walk half a block and can stand for 20 minutes. She has arthritis in her shoulders which limits her overhead reaching. (Tr. 409-10). She also has memory problems. (Tr. 411-12). She does very little housework or yard work, but is able to do some shopping. (Tr. 416-17).

### III. The Medical Records

Pertinent medical records reveal the following. Plaintiff's treating physician is Dr. Cristales from the Livingston Lockbourne Avenue Family Health Center. Many of his patient progress notes are illegible or barely legible. (Tr. 171-88). However, he wrote a letter on February 6, 2002 stating that plaintiff was under his care for lumbosacral sprain and strain and that it was his medical opinion that she could not sit for long periods of time without experiencing extreme discomfort. (Tr. 189). Dr. Norris, a State agency reviewer, completed a

physical residual functional capacity assessment form on October 22, 2002, stating that plaintiff had a disc protrusion at L5-S1 but that her subjective complaints were somewhat in excess of the objective evidence.  He thought that she could work at the light exertional level with some limitations on her ability to climb, stoop or crouch.  He also stated that she would have to alternate sitting and standing periodically to relieve pain or discomfort, but thought that this restriction would not prevent her from working as a cashier or receptionist.  (Tr. 199-204).

Plaintiff underwent a consultative examination performed by Dr. Purdy on July 17, 2003.  Her main complaints were back pain and hip pain and the inability to bend forward.  On examination, she was found to be grossly obese and her deep tendon reflexes were reduced secondary to her obesity.  She could stoop with assistance and walked with a slight limp.  The range of motion of her hips was abnormal.  She did not use a cane.  Dr. Purdy's impression was degenerative joint disease of the lumbar spine, a history of hypertension, morbid obesity, orthostatic hypotension, a thyroid mass, and numerous allergies.  Plaintiff was not a good candidate for physical activities such as walking, lifting, carrying, or handling objects, but she would be a candidate for physical therapy.  Dr. Purdy appeared to believe that plaintiff could continue with her position of a sitting attendant.  (Tr. 209-13).  Plaintiff underwent a similar examination for workers' compensation purposes on October 1, 2003, which was performed by Dr. Season.  He noted that her range of lumbosacral motion was approximately 50% of normal and that she appeared to have developed a chronic pain syndrome.  He did not believe she could return to her former employment and that she could work only in a sedentary capacity.  He recommended weaning her off narcotic analgesics and thought that her prognosis was guarded.  (Tr. 220-22).

Dr. Drew completed a residual function capacity assessment on August 14, 2003. She also found that plaintiff could work at the light exertional level and that she had some postural limitations. She, too, commented that plaintiff's symptoms were somewhat out of proportion to the objective evidence. Dr. Hinzman reviewed her findings on January 16, 2004 and concurred with them. (Tr. 223-27). However, Dr. Cristales expressed a different opinion on February 21, 2005, indicating that plaintiff suffered from low back pain which radiated to her left leg, that her impairments were reasonably consistent with her symptoms and functional limitations, that her pain constantly interfered with her concentration, that she could only walk a half block, could only sit for 20 minutes and stand for 10 minutes, could remain in any work posture for only two hours during a work day, would need to take multiple unscheduled breaks, needed to walk with a cane, and would miss more than four days per month due to her impairments. (Tr. 228-33).

Plaintiff underwent a psychological evaluation on March 21, 2005, which was performed by Dr. Swearingen. She reported that her disability was due to back surgery and osteoporosis. Her eye contact was good and her affect was reactive. She did report crying spells and some depression. The diagnostic impressions included a depressive disorder not otherwise specified. Her GAF was rated at 65 and she had only a few mild impairments in work-related areas. (Tr. 234-38).

There are 40 pages of medical records from doctors to whom plaintiff was apparently referred by Dr. Cristales and which cover a time frame from June, 2001 through June, 2005. On June 17, 2001, an MRI of the lumbar spine was performed which showed a bulging at the L5 level associated with foraminal encroachment and multilevel facet joint degenerative disease. Dr. Todd, an orthopedic surgeon, reported on August 10, 2001, that plaintiff

was suffering from lumbosacral sprain and strain.  At that time, he recommended an exercise program.  In February, 2002, plaintiff reported that the physical therapy had made her worse.  By July, 2002, a diagnosis of internal disk derangement and disc protrusion had been entered.  In May, 2004, plaintiff underwent a lumbar laminectomy.  Five weeks after the surgery, she was still having back pain.  The same was true in August, 2004.  In October of 2004, it appeared that one of the surgical screws had migrated due to osteoporosis and she was offered surgery to remove it. Dr. Todd removed her lumbar hardware on April 28, 2005.  His operative note states that she had experienced persistent and progressive pain involving her lower back and legs since her prior surgery.  Four weeks after the surgery, she stated that she felt a little better but still had numbness and tingling in her right leg.  She was using a walker at the time.  Dr. Todd did note that her fusion was solid.  At that time, because plaintiff was healing from surgery, he instructed her to avoid bending, twisting, or lifting more than 10 to 15 pounds and to avoid physical therapy for three months.  (Tr. 239-78).

Dr. Cho, a state agency reviewer, evaluated plaintiff's physical residual functional capacity on August 10, 2005.  He thought that plaintiff could work at the light exertional level with some postural limitations.  Like the other state agency reviewers, he concluded that her subjective report of symptoms was only partially credible and that she was not completely disabled.  (Tr. 293-300).

Plaintiff continued to see Dr. Todd after the removal of her surgical hardware.  She attended physical therapy twice but then discontinued it.  On August 10, 2005, Dr. Todd prescribed a cane to use for stability instead of her walker.  In December, 2005, she reported a development of some pain in her right posterior calf as well as some worsening back discomfort.  She had an MRI

which did not show any significant difference in her condition. Dr. Todd again recommended physical therapy as well as epidural injections. As of May 1, 2006, she had been approved for water aerobics, and he also encouraged her to lose weight. (Tr. 302-12).

Plaintiff also continued to see Dr. Cristales during this time. Again, his office notes are fairly illegible but they do contain a page on which he recited plaintiff's diagnoses and her medications. He also stated that due to her conditions she was presently unable to work. That note is dated October 24, 2007. (Tr. 319).

## IV. The Expert Testimony

A vocational expert, Mr. Grzesik, testified at the administrative hearing. He characterized plaintiff's past work as a home health aide as semi-skilled and medium. (Tr. 422). He was asked to assume that plaintiff could work at the light exertional level but could not climb ladders, ropes or scaffolds, could not bend at the waist to the floor, could not crouch, and could not do overhead work. With those restrictions, she could not perform her past work. (Tr. 422-23). However, she could do such jobs as small parts assembler, production assembler, and electronics worker. (Tr. 424-25). If she were limited to working at the sedentary level, she could work as a call-out operator, information clerk, or order clerk. (Tr. 425). Those jobs could be performed by someone who could not lift over five pounds or by someone who was limited to the performance of simple tasks. (Tr. 425-26). If her pain caused her to miss four days of work per month, however, she could not do any jobs. (Tr. 432).

## V. The Administrative Decision

Based on the above evidence, the Commissioner found, first, that plaintiff was insured for disability insurance purposes

through December 31, 2005.  Second, the Commissioner found that
plaintiff suffered from severe impairments including a back
disorder, an affective disorder and degenerative joint disease in
the right shoulder.  With those impairments, she was limited to
the performance of sedentary work activities which involve only
simple job tasks and which do not require bending from the waist,
crouching or working overhead.  Based on the vocational expert's
testimony, although plaintiff could not perform her past relevant
work with these restrictions, she could do the jobs he identified
at the sedentary level, and the Commissioner found that those
jobs exist in significant numbers in the Columbus, Ohio region.
Consequently, plaintiff was not entitled to a finding of
disability.

VI.  Legal Analysis

In her statement of errors, plaintiff raises the following
issues.  First, she asserts that the Commissioner *de facto*
reopened the initial denials of prior applications which she had
filed.  Second, she asserts that the Commissioner erred in not
evaluating her need for a cane.  Third, she claims that the
Commissioner erred by not considering a closed period of
disability.  Fourth, she contends that the Commissioner should
have evaluated the 2002 opinion of Dr. Norris.  Fifth, she takes
issue with the Commissioner's treatment of Dr. Cristales'
February, 2005 opinions.  Finally, she contends that the
Commissioner applied an improper standard concerning the burden
of persuasion when reviewing her case.  These contentions are
evaluated under the following standard of review.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary as to any
fact, if supported by substantial evidence, shall be
conclusive. . . ."  Substantial evidence is "'such relevant
evidence as a reasonable mind might accept as adequate to

support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" *Id.*  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The first issue raised by plaintiff is essentially conceded by the Commissioner.  Although the Commissioner might have considered the final denials of plaintiff's earlier applications for benefits as *res judicata* with respect to her claim for a disability arising prior to 2004, that did not happen.  Thus, the Court is able to review in full the decision that plaintiff had not established disability at any time after her alleged onset date of June 7, 2001.

With respect to her second argument, plaintiff asserts several sub-issues. First, she points out that under SSR 96-9p, the Commissioner is required to evaluate whether a claimant needs a hand-held assistive device such as a cane, and, if so, whether that has an impact on the jobs she is otherwise capable of

performing.  Second, she argues that although both Dr. Christales and Dr. Todd either prescribed a cane for her or stated that she needed one, the administrative decision gave no reason for rejecting their opinions.  Finally, she asserts that this issue justifies a remand because the vocational expert was not asked to consider whether the jobs he identified as being within plaintiff's capabilities could be performed by someone who must use a cane.

Plaintiff is certainly correct that the Commissioner's residual functional capacity finding (Tr. 16) makes no mention of the need to use a cane.  Further, she is correct that the administrative decision nowhere acknowledges either that she had used a cane or walker at any time, or that such a device had been prescribed for her by her doctors.  Finally, she correctly points out that SSR 96-9p acknowledges that the need to use a cane may (or may not) have an impact on the ability to perform sedentary jobs and instructs adjudicators that "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work."  In fairness, that regulation also states that in order for this factor to be considered, "there must be medical documentation establishing the need for hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed ...."  Nevertheless, this record does contain multiple references to the fact that plaintiff's use of a cane may be (or at least for a period of time may have been) medically necessary.

The Commissioner does not directly respond to this argument. Rather, in his memorandum, he discusses the need for a cane in connection with the separate argument that the February, 2005 opinion of disability rendered by Dr. Christales was improperly discounted, contending that this was one of the "extreme

limitations" which the administrative decision rejected (even though the decision does not say that specifically). The Commissioner argues that Dr. Todd's independent prescription of a cane was also properly disregarded because he "said nothing about the need for a cane, nor did he observe that Ms. Penn was using one in his subsequent report ...." Memorandum in Opposition, Doc. #15, at 15. The latter observation is true, but it is hard to reconcile the former with Dr. Todd's statement that "I also gave her a prescription for a cane to use for stability ...." (Tr. 309). The Commissioner's memorandum does not mention SSR 96-9p.

There are cases which have excused the failure to take the need for a cane into consideration when dealing with a claimant who is restricted to sedentary work. For example, in Rivera v. Astrue, 2009 WL 235353, *5 (E.D. Pa. January 29, 2009), the court declined to remand a case for failure to consider the claimant's use of a cane where the medical evidence contained only one note referring to use of a cane and the claimant admitted he could stand for up to an hour without his cane. On the other hand, in a case where there were multiple references in the medical evidence to the use of a cane and it could be inferred that such use was more than just a subjective desire of the claimant, the court in Burns v. Astrue, 2009 WL 950773, *6 (C.D. Cal. April 7, 2009) held that "the ALJ erred by failing to properly consider, or to provide sufficient reasons for rejecting, such evidence in determining plaintiff's RFC." See also White v. Barnhart, 153 Fed. Appx. 432 (9th Cir. November 3, 2005) (remanding for vocational testimony about the impact of the use of a cane where there was insufficient evidence to determine that the claimant's use of a cane was not required).

In the Court's view, this case is much more like Burns than it is like Rivera. The consistent reference to the use of a cane

(or a walker) in 2004 and 2005 is enough to trigger an obligation on the part of the Commissioner to decide if such use is medically necessary and, if so, to have included that factor in the RFC analysis.  The complete absence of any direct consideration of this issue (in fact, the Court is unable to find the word "cane" anywhere in the administrative decision) leads to the conclusion that this issue was simply overlooked.  Because vocational testimony is needed to determine if this factor would have an impact on the sedentary jobs identified by the vocational expert, this failure cannot be considered harmless.  Thus, this error does require that the case be remanded.

Given that a remand will be ordered, it is not necessary to deal with plaintiff's other assignments of error to any great degree.  The only argument advanced against her assertion that the Commissioner should have considered a closed period of disability is that the issue was not raised during the administrative proceedings.  The Court does not believe the argument was waived, but in any event because there will be new administrative proceedings, the Commissioner will have an opportunity to consider the issue anew.  A remand will also allow the Commissioner to make sure that the articulation requirements of Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004) and Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), are followed, and that, in particular, if Dr. Christales' opinions continue to be discounted, the Commissioner make specific reference to the salient factors set forth in 20 C.F.R. §1404.4527, including the length of the treating relationship, the frequency of examination, the supportability and consistency of the opinion, and the specialization of the source.  The Commissioner will also have the opportunity to consider the import, if any, of Dr. Norris' 2002 opinion and to apply the burden of proof correctly.  The

-11-

Court expresses no opinion on whether, as plaintiff claims, this was not done properly in the decision under review.

## VII. Conclusion

For the forgoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four, and that a judgment be entered to that effect.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge